UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 18-CR-0128-CVE |
| DAROWE JUNIOR JONES, a/k/a "Darowe Jones, Jr.," | ) ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Now before the Court is plaintiff's notice of intent to offer evidence pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)") (Dkt. # 115), as well as defendant Darowe Junior Jones's objection to the introduction of Rule 404(b) evidence (Dkt. # 117).

**I.**

Plaintiff alleges that on March 20, 2017, February 21, 2018, April 17, 2018, and April 19, 2018, Tulsa Police Department ("TPD") officers recovered drugs, drug paraphernalia, and firearms from houses where defendant or Dannie Dee Dill lived.[1] The controlled substances recovered included approximately 186 grams of heroin found in a chest freezer in defendant's garage. Based on the evidence found during those four searches, defendant is charged with fifteen counts, including

---

[1] The facts mentioned by the Court in this Opinion and Order are provided in plaintiff's notice as the relevant summary of facts based on the proposed testimony of the TPD officers. However, the Court is not making any findings of fact or preventing any party from contesting the testimony of any witnesses at trial. The Court recites the facts simply as background and the credibility of the witnesses is a matter left to the sound discretion of the jury.

counts alleging possession with intent to distribute heroin, cocaine, methamphetamine, and marijuana, and drug conspiracy. Dkt. # 48.

In addition to the charged substances, plaintiff seeks to introduce evidence in its case-in-chief that defendant possessed with intent to distribute and distributed certain uncharged substances. Specifically, plaintiff seeks to introduce evidence of n-ethylpentylone, a synthetic cathinone similar to Ecstasy but up to three times more potent, which it alleges TPD officers found in the same freezer as the heroin. Plaintiff asserts that, although the substance was unscheduled at the time of its discovery, it was temporarily scheduled as a Schedule I controlled substance on August 31, 2018. Additionally, plaintiff plans to introduce the testimony of Cherie Michelle Kelley, defendant's co-defendant and alleged co-conspirator, that, along with heroin and methamphetamine, defendant regularly distributed Xanax (alprazolam) to her. Defendant is not charged with any crimes related to the n-ethylpentylone or Xanax.

## II.

In its notice of intent, plaintiff makes two arguments to support introduction of evidence regarding the n-ethylpentylone and Xanax. First, plaintiff suggests that the evidence is intrinsic and, thus, not subject to Rule 404(b). Second, and in the alternative, plaintiff argues that the evidence of the uncharged substances should be admitted under Rule 404(b), because evidence of "other crimes, wrong, or acts" is admissible if it is relevant to show more than the defendant's mere propensity to commit the crime charged. Here, plaintiff purports to offer the evidence of the n-ethylpentylone and Xanax to help demonstrate that defendant had the motive, knowledge, and intent to commit the crimes with which he is charged. Specifically, plaintiff argues that the fact that defendant possessed 152 grams of n-ethylpentylone in the same freezer in which he possessed 186

grams of heroin makes it less likely that defendant did not know the heroin was a controlled substance and more likely that he possessed both substances with intent to distribute them. Further, plaintiff argues that the evidence of Xanax distribution makes it less likely that defendant mistakenly or accidentally possessed large quantities of controlled substances or distributed the charged substances to Kelley without knowledge that they were controlled substances. Finally, plaintiff argues that the probative value of the evidence of the n-ethylpentylone and Xanax is not substantially outweighed by the danger of unfair prejudice to defendant, because the evidence regarding defendant's distribution of the charged substances will be more prejudicial to him than evidence of Xanax and n-ethylpentalone distribution.

      Defendant filed an objection to plaintiff's notice of intent to introduce evidence of uncharged substances. Dkt. # 117. First, defendant argues that the evidence is not intertwined with any charged crime; it is not a necessary preliminary; it is not directly connected to any charged crime; and it does not provide background information. Therefore, defendant argues, the evidence is extrinsic to the charged crimes and is subject to Rule 404(b). Second, defendant argues that the evidence cannot withstand a Rule 404(b) analysis because plaintiff seeks to introduce it exclusively for the purpose of proving defendant's character in order to show that on a particular occasion defendant acted in accordance with the character, which is a purpose prohibited under Rule 404(b). Finally, defendant argues that the evidence cannot survive the Rule 403 analysis, regardless of whether it is intrinsic or extrinsic. If the evidence is intrinsic, defendant argues, its probative value is substantially outweighed by the risk of unfair prejudice to this defendant, because the evidence will have no bearing on proving or disproving the elements of the charged crimes, and it will only serve to negatively affect the jury's attitude toward defendant. If the evidence is extrinsic, defendant

argues, it should be excluded because it does not prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Further, he argues, there is a real danger of unfair prejudice, confusion of the issues, and misleading the jury, because there is no direct link to the charged crimes.

### III.

Rule 404(b) provides, in pertinent part:

> Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> . . .
> This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

However, Rule 404(b) does not apply to "other act" evidence which is admitted as proof of the charged conduct; it applies only to evidence of acts extrinsic to the charged crime. United States v. Irving, 665 F.3d 1184, 1212 (10th Cir. 2011). Here, the Court finds that the evidence of the uncharged substances, n-ethylpentylone and Xanax, is intrinsic to the charged crimes; therefore, the evidence is not subject to Rule 404(b) analysis. The Tenth Circuit has held that "intrinsic evidence is that which is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." Irving, 665 F.3d at 1212. Moreover, "'[a]n uncharged act [is not] extrinsic if it was part of the scheme for which a defendant is being prosecuted . . . .'" United States v. DeLuna, 10 F.3d 1529, 1532 (10th Cir. 1993) (quoting United States v. Record, 873 F.2d 1363, 1372 n.5 (10th Cir. 1989)). The Xanax evidence is intrinsic because defendant is charged with drug conspiracy, and Kelley is an alleged co-conspirator. Evidence relating to the interactions between defendant and an alleged co-conspirator, including the Xanax distribution, are directly

4

related to the drug conspiracies for which defendant is being prosecuted. See United States v. Vasquez, 422 Fed. App'x 713, 717 (10th Cir. 2011) (affirming the district court's conclusion that "the uncharged acts involving cocaine and marijuana were inextricably intertwined with the conspiracy involving methamphetamine and therefore outside the ambit of Rule 404(b)").[2] The evidence of the n-ethylpentylone is also intrinsic because TPD officers discovered it in defendant's freezer alongside the heroin for which defendant is charged while executing a search of defendant's house. Therefore, the evidence of the n-ethylpentylone is "inextricably intertwined" with the evidence regarding the offenses charged in the superseding indictment. See United States v. Cruz, 343 F. Supp. 2d 226, 231 (S.D.N.Y. 2004) (holding that evidence of a ski mask was inextricably intertwined with evidence regarding the charged offense of felon-in-possession where the ski mask was located in the compartment from which the firearm was recovered).

Even though this evidence is intrinsic to the charged offenses, however, it still may be excluded under Rule 403. United States v. Lambert, 995 F.2d 1106 (10th Cir. 1993) ("Such intrinsic 'other act' evidence, although not excluded by 404(b), is still subject to the requirement of Fed. R. Evid. 403 that its probative value is not substantially outweighed by the danger of unfair prejudice."). Under Rule 403, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . [inter alia]: unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time . . . ." Evidence is unfairly prejudicial only if it makes "a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its

---

[2] This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

5

judgment as to his guilt or innocence of the crime charged." United States v. Smith, 534 F.3d 1211, 1219 (10th Cir. 2008).

The Court finds that the Xanax evidence is highly probative in showing the relationship between defendant and Kelley, an alleged co-conspirator, and their course of dealings. Further, although admission of this evidence might prejudice defendant, the Court finds that any unfair prejudice would be slight in comparison to its probative value. In the context of defendant being charged with possession with intent to distribute methamphetamine, cocaine, heroin, and marijuana, and drug conspiracy, the evidence that defendant distributed Xanax to an alleged co-conspirator would not elicit such an emotional reaction from the jury as to make his conviction more likely. Further, Kelley's testimony that defendant distributed Xanax to her would not confuse the issues or mislead the jury as to warrant its exclusion. The Court finds that the Xanax evidence is admissible.

On the other hand, the Court finds that the n-ethylpentylone evidence is highly prejudicial, and would create a substantial danger of confusing the issues, misleading the jury, undue delay, and wasting time. As plaintiff asserts in its notice of intent, n-ethylpentylone was not a scheduled controlled substance at the time it was discovered in defendant's freezer; however, it was temporarily scheduled as a Schedule I controlled substance, "an action deemed necessary to avoid imminent hazard to public safety." First, evidence that defendant possessed with intent to distribute a substance that has the potential to cause "imminent hazard to public safety" is likely to cause an emotional response in the jury; thus, the danger of unfair prejudice is significant. Second, because the substance is unscheduled, plaintiff would have to prove by a preponderance of the evidence that defendant's possession of the substance constitutes a violation of the Controlled Substance Analogue Enforcement Act of 1986, 21 U.S.C. §§ 802(32) and 813 ("CSAEA"). To do so, plaintiff would

have to prove by a preponderance of the evidence that "the drug in question bears two features: (1) it must be substantially similar in chemical structure to a schedule I or II CSA controlled substance, and (2) it must have, or be represented or intended to have, an effect on the central nervous system that is substantially similar to that of a schedule I or II CSA substance. When it comes to mens rea . . . the government must show that the defendant <u>knew</u> the drug he possessed either (1) had both of these features, or (2) was controlled by the CSA or Analogue Act." <u>United States v. Makkar</u>, 187 F. Supp. 3d 1301, 1308 (N.D. Okla. 2016) (summarizing the Tenth Circuit's characterization of plaintiff's burden). Proving this burden would be no small feat for plaintiff, and any attempt to do so would require the Court to decide significant issues of law and fact that are otherwise not present in this case. In effect, the Court would need to conduct a trial within a trial. Thus, admitting the n-ethylpentylone evidence would create a substantial danger of confusing the issues, misleading the jury, causing undue delay, and wasting judicial time and resources–all of which significantly outweigh any probative value that such evidence might have. Therefore, the Court finds the evidence of n-ethylpentylone inadmissible under Rule 403.

**IT IS THEREFORE ORDERED** that the evidence of Xanax and n-ethylpentylone is intrinsic, but that the Xanax evidence is admissible under Rule 403 and the n-ethylpentylone evidence is inadmissible under Rule 403.

**DATED** this 19th day of October, 2018.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE